UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

WILLIAM GAINES,

          Plaintiff,

    v.

SBC COMMUNICATIONS, INC.,
ALICE HUERTA, DEBRA THOMAS;
DOE 1; DOE 2; DOE 3; DOE 4;
DOES 5 through 100, inclusive,

          Defendants.

NO. 2:04-cv-2297-MCE-GGH

MEMORANDUM AND ORDER

----oo0oo----

    In bringing the present action, Plaintiff William Gaines ("Plaintiff") alleges that he was laid off from his position as a first-level supervisor with Defendant Pacific Bell Telephone Company ("Pacific Bell")[1] because of his race and/or age.

///

///

///

---

[1] Pacific Bell was erroneously sued herein as "SBC Communications, Inc."

1

Pacific Bell removed Plaintiff's action, originally filed in state court, to this court on grounds that it included federal claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), as well as claims brought pursuant to 42 U.S.C. § 1983 ("Section 1983"). Pacific Bell now moves for summary judgment as to Plaintiff's claims in their entirety[2] on grounds that said claims fail as a matter of law. For the reasons outlined below, Pacific Bell's motion will be granted.

**BACKGROUND**[3]

Plaintiff, an African-American male, was hired by Pacific Bell on September 1, 2000. On or about March 1, 2002, Plaintiff was transferred to the Sacramento Customer Service Center, where he became a Mechanized Loop Assignment Center ("MLAC") Supervisor, reporting to Area Manager Deborah Thomas ("Thomas"). Thomas, in turn, reported as Alice Huerta ("Huerta"), General Manager for both the North (Sacramento) and Bay (San Ramon)

---

[2]Plaintiff's discrimination and harassment claims are also predicated on alleged violations of California law under the Fair Employment and Housing Act, California Government Code § 12900, et seq. ("FEHA").

[3]Some of the factual allegations as set forth in this section are disputed by the parties. To the extent either party has interposed evidentiary objections to these facts, however, those objections are overruled unless otherwise noted. Additionally, this section incorporates the facts considered by the Court in ruling on this motion. The Court need not rule on objections to evidence not discussed below, and declines to do so, because that evidence was not germane to the Court's decision. The Court similarly declines to rule on requests that certain evidence be stricken for the same reason.

Customer Service Centers.

Both Thomas and Huerta have been named as individual defendants to this action along with Pacific Bell.

Because Thomas believed that Plaintiff's performance as an MLAC Supervisor was inconsistent, she decided to laterally transfer Plaintiff to another first-level supervisorial position as an In-Charge/Force Manager responsible for managing customer service employees' work schedules.  Plaintiff, in essence, switched jobs with another supervisor, Lisa Cigelske, and Ms. Cigelske was enlisted to help train Plaintiff in assuming the responsibilities attendant to her former position.

Plaintiff's transition to the In-Charge/Force Manager position, which took place in June of 2002, was not a smooth one. He and Cigelske did not share a good working relationship; Cigelske complained to Thomas that Plaintiff was not expending enough effort to learn his new job's duties and Plaintiff, for his part, felt that Cigelske was impatient and spoke to him in a demeaning manner.  Thomas received complaints about Plaintiff's job performance from at least two other sources after Plaintiff's transfer to the In-Charge/Force Manager position.

In late 2002, Pacific Bell announced plans for a nationwide reduction in force ("RIF") that would encompass a total of 11,000 job cuts across the country, 9,000 of which were scheduled to occur by the end of the year and one-third of which would impact managerial positions.  In order to effectuate that RIF, Alice Huerta was told by her boss at the time, Rick Resnick, to reduce five first-level supervisors from her Sacramento/San Ramon organization.

On September 19, 2002, Huerta instructed her area managers, including Deborah Thomas, to rate and rank the forty-one first-level supervisors working in Sacramento and San Ramon.  For purposes of determining which supervisors would be designated "surplus" and selected for layoff, Huerta told her managers to rate their supervisors in the manner prescribed by Pacific Bell's Management Staffing Guidelines.  Those Guidelines required that supervisors be grouped into four general categories[4] predicated on performance, skills, experience and training.  Supervisors assigned the same rating would then be ranked to the extent necessary to match the number of positions to be eliminated.  Huerta told her managers to rate the first-level supervisors collectively since the RIF was directed to their classification generally and not to any more particularized job description.

Because two of the five targeted supervisor positions had already been vacated by a death in one instance and a transfer in another, ultimately only three individuals had to be selected for layoff.  In the end, three supervisors, including Plaintiff, were rated within the lowest classification.  Plaintiff was ranked in the middle of three employees hence determined to be "surplus" and subject to the RIF.

//
//
//
//

---

[4]Those groups were comprised of the designation "A" (exceeding expectations, "B" (meeting expectations), "C" (meeting some expectations), and "D" (not meeting expectations).

4

Thereafter, on November 12, 2002, Huerta and Thomas met with Plaintiff and informed him that as a surplus employee, he would be terminated in thirty days unless he was hired in another capacity by Pacific Bell.[5]  Plaintiff did not secure another position and his employment with Pacific Bell terminated on December 13, 2002.

Plaintiff was fifty-three years of age at the time of the RIF.  The second supervisor designated as surplus, John Busath, age forty-five, was ranked ahead of Plaintiff.  The lowest ranked supervisor, Marc Stevenson, was thirty-six.  Both Busath and Stevenson were Caucasian.

Plaintiff now claims that he was discriminated against by Pacific Bell due to his race and age, despite the fact that the ten other African-American supervisors subjected to rating were all retained, and despite the fact that in the Sacramento Customer Service Center alone, three of twelve retained managers were older than Plaintiff.

In moving for summary judgment, Defendants argue that Plaintiff has produced no evidence to suggest that Plaintiff's layoff was motivated by discriminatory animus.  Accordingly, Defendants claim that Plaintiff's claims premised on Title VII and FEHA violations necessarily fail.  Defendants go on to contend that Plaintiff's only other cause of action, for civil rights violations under 42 U.S.C. §§ 1983 and 1988, also fail in the absence of any governmental action.

///

_____

[5]Plaintiff was also given the option of immediate termination, with severance, which he declined.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Rule 56(c).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986); First Nat'l Bank v. Cities Ser. Co., 391 U.S. 253, 288-289 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.

6

Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
the fact in contention is material, i.e., a fact that might
affect the outcome of the suit under the governing law, and that
the dispute is genuine, i.e., the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 251-52
(1986); <u>Owens v. Local No. 169, Assoc. of Western Pulp and Paper</u>
<u>Workers</u>, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,
"before the evidence is left to the jury, there is a preliminary
question for the judge, not whether there is literally no
evidence, but whether there is any upon which a jury could
properly proceed to find a verdict for the party producing it,
upon whom the onus of proof is imposed." <u>Anderson</u>, 477 U.S. at
251 (quoting <u>Improvement Co. v. Munson</u>, 14 Wall.442, 448, 20
L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the
moving party has carried its burden under Rule 56(c), its
opponent must do more that simply show that there is some
metaphysical doubt as to the material facts ... Where the record
taken as a whole could not lead a rational trier of fact to find
for the nonmoving party, there is no 'genuine issue for trial.'"
<u>Matsushita</u>, 475 U.S. at 586-87.

**ANALYSIS**

Plaintiff's First Amended Complaint contains four causes
of action all premised on claims that Plaintiff was discriminated
against in violation of both Title VII and FEHA.
///

7

The factual basis for all four claims are intertwined, and share common allegations that Plaintiff's selection for layoff was motivated by a discriminatory animus and/or that Plaintiff was subject to impermissible harassment on the basis of his race and age.  Plaintiff's seventh and final claim is for violation of his civil rights under 42 U.S.C. §§ 1983 and 1988.

Because the subject matter of Plaintiff's lawsuit falls within these three main areas – discrimination, harassment, and violations of Sections 1983 and 1988, each of those areas will now be addressed.

**A.  Race or Age Discrimination**

In asserting a viable claim under Title VII, Plaintiff must first establish a *prima facie* case of disparate treatment under the framework outlined by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  In order to make that initial showing, Plaintiff must demonstrate 1) that he belongs to a protected class; 2) that he was performing his job satisfactorily; 3) that he was terminated, rejected for employment, or otherwise subjected to a tangible employment action; and 4) that this took place under circumstances giving rise to an inference of unlawful discrimination.  <u>See</u> <u>Id.</u> at 802; *see also* <u>Texas Dep't of Cmty. Affairs v. Burdine,</u> 450 U.S. 248, 253 (1981).

///

///

///

///

8

The burden of establishing a *prima facie* case is not onerous; to survive summary judgment Plaintiff need only provide evidence from which it can reasonably be inferred that her employer's decision was based on a discriminatory motive. <u>Id.</u>; <u>Peterson v. Hewlett-Packard Co.</u>, 358 F.3d 599, 603 (9th Cir. 2004). The amount of evidence required is "very little" so long as it is more than "purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars." <u>Id.</u>, citing <u>Forsberg v. Pac. Northwest Bell Tel. Co.</u>, 840 F.2d 1409, 1419 (9th Cir. 1988).

If Plaintiff succeeds in establishing a *prima facie* case as outlined above, the burden shifts to the Defendants to articulate a legitimate, non-discriminatory reason for the adverse action taken. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. at 256. If Defendants satisfy that burden, the Plaintiff must then show that the reason proffered by Defendants was merely a pretext for discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 804; <u>Bodett v. CoxCom, Inc.</u>, 366 F.3d 736, 743 (9th Cir. 2004).

The <u>McDonnell Douglas</u> burden-shifting analysis applicable to Title VII claims is equally germane to FEHA claims. <u>Horn v. Cushman & Wakefield Western, Inc.</u>, 72 Cal. App. 4th 798, 805-06 (1999).

Applying the <u>McDonnell Douglas</u> criteria to the present case, Defendants do not dispute that Plaintiff, an African-American, qualifies as a member of a protected class.

///

///

9

1   Moreover, while Defendants ostensibly contend that Plaintiff was
2   not performing his job in a satisfactory manner, it is undisputed
3   that Plaintiff ultimately was not rated as failing to meet work
4   expectations.  Particularly when viewed in the context of the
5   minimal showing required to make a prima facie case, Plaintiff
6   has satisfied the job performance portion of establishing a
7   viable discrimination claim.  Finally, it is even plainer that
8   Plaintiff's layoff constituted an adverse employment action for
9   purposes of meeting the third prong of the <u>McDonnell Douglas</u>
10  analysis, particularly since the Ninth Circuit has consistently
11  taken a broad view of what constitutes an adverse employment
12  action in that regard.  <u>See, e.g.</u>, <u>Fonseca v. Sysco Food Services</u>
13  <u>of Arizona, Inc.</u>, 374 F.3d 840, 847 (9th Cir. 2004); <u>Ray v.</u>
14  <u>Henderson</u>, 217 F.3d 1234, 1240 (9th Cir. 2000).

15       That leaves the fourth and final element of a *prima facie*
16  discrimination case: evidence suggesting that, in this case,
17  African-American employees were treated less favorably than their
18  Caucasian counterparts, thus giving rise to an inference of
19  discrimination against Plaintiff, as an African-American man.

20       Plaintiff has presented no competent evidence to support
21  such a discriminatory inference.  Although the two other
22  supervisors initially designated as surplus were Caucasian, as
23  indicated above nine out of the ten Caucasian supervisors under
24  Alice Huerta's control were retained.  Plaintiff has otherwise
25  pointed to nothing which suggests any racial animus on the part
26  of either Defendant Huerta or Defendant Thomas in making the
27  decision to as to which employees would be designated surplus.
28  ///

1   Although John Busath was ultimately retained as a first-level
2   supervisor (due to an opening created by the death of another
3   supervisor), that fact does not demonstrate discrimination.

4        Defendants have shown that Busath had better performance
5   evaluations, a longer tenure of employment with Pacific Bell, and
6   more relevant work experience and education than Plaintiff.  At
7   any rate, to raise a triable question of discrimination,
8   Plaintiff's qualifications must have been "clearly superior" than
9   Busath's.  Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d
10  1185, 1194 (9th Cir. 2003).  Plaintiff has not made such a
11  showing.

12       Plaintiff's argument that his age was also a factor is
13  equally unsupported.  Three of twelve supervisors retained in
14  Sacramento were older than Plaintiff and Marc Stevenson, the
15  other supervisor eventually subject to layoff, was considerably
16  younger at thirty-six years of age compared to Plaintiff's fifty-
17  three.  Plaintiff has produced no evidence at all to suggest that
18  he was discriminated against on the basis of his age in any
19  fashion.

20       Since Plaintiff has utterly failed to make any showing that
21  his layoff occurred under circumstances giving rise to any
22  inference of discrimination, this Court does not believe that
23  Plaintiff has set forth even a *prima facie* showing of
24  impermissible behavior under the McDonnell Douglas framework.
25  Nonetheless, because the evidentiary burden for that showing has
26  been deemed to be slight (Peterson v. Hewlett-Packard Co., 358
27  F.3d at 603), the Court will proceed with the remainder of the
28  analysis.

11

1  Hence the Court will look to whether Defendants have demonstrated
2  a legitimate, non-discriminatory reason for Plaintiff's layoff,
3  and will then examine whether the reason advanced by Defendants
4  in that regard was merely pretextual.  Plaintiff fares no better
5  in sustaining a viable claim under those latter portions of the
6  McDonnell Douglas analysis than he did for purposes of meeting
7  his initial *prima facie* burden.

8      Defendants have produced evidence showing that the reduction
9  in force pursuant to which Plaintiff was laid off stemmed from a
10 nationwide decision affecting thousands of employees.  Plaintiff,
11 in response, has not demonstrated that the RIF was initiated for
12 anything other than for valid business purposes.  A reduction in
13 force has been deemed by the Ninth Circuit to constitute a
14 legitimate, nondiscriminatory reason for terminating an employee.
15 See Winarto v. Toshiba Am. Elec. Components, Inc., 274 F.3d 1276,
16 1295 (9th Cir. 2001).

17     Since Defendants have unquestionably demonstrated the
18 requisite nondiscriminatory reason for laying off Plaintiff
19 pursuant to its RIF, the validity of Plaintiff's claim, assuming
20 that he can make a valid *prima facie* case, depends on whether he
21 can show that the RIF was really just a pretext for
22 discriminating against Plaintiff due to his race and/or age.  See
23 St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993).

24     Evidence of pretext can be either direct, in persuading the
25 court that a discriminatory reason more likely motivated
26 Defendants, or indirect, by showing that Defendants' proffered
27 explanation is unworthy of credence.  Raad v. Fairbanks N. Star
28 Borough Sch. Dist., 323 F.3d at 1196.

1   Plaintiff's burden, like that in establishing a *prima facie* case,
2   "is hardly an onerous one", and the plaintiff "need produce very
3   little evidence of discriminatory motive to raise a genuine issue
4   of fact as to pretext." <u>Payne v. Norwest Corp.</u> 113 F.3d 1079,
5   1080 (9th Cir. 1997), citing <u>Warren v. City of Carlsbad</u>, 58 F.3d
6   439, 443 (9th Cir. 1995).  Nonetheless, some "specific and
7   substantial" evidence must be offered to show that Defendants'
8   reason for Plaintiff's termination was really just a pretext for
9   unlawful discrimination.  <u>Aragon v. Republic Silver State</u>
10  <u>Disposal, Inc.</u>, 292 F.3d 654, 661 (9th Cir. 2002).  Evidence
11  already produced to establish Plaintiff's *prima facie* case may be
12  considered to show the requisite pretext, so the initial showing
13  to support an inference of discrimination may also go towards
14  demonstrating pretext.  <u>See, e.g.,</u> <u>Yartzoff v. Thomas,</u> 809 F.2d
15  1371, 1377 (9th Cir. 1987).

16      Although Plaintiff's burden in establishing pretext, at
17  least for purposes of defeating summary judgment, is not
18  extensive, Plaintiff must point to at least some credible
19  evidence in support of his theory that the termination of his
20  employment was due to race and/or age rather than simply in
21  accordance with a nationally-mandated reduction in force.
22  Plaintiff has failed to adduce any such evidence.  No direct
23  evidence of discriminatory animus has been presented, and the
24  circumstantial evidence as discussed above does not support any
25  inference of discrimination, either.[6]

26

27      [6]While Plaintiff argues that he did not receive a formal
performance evaluation prior to his selection for RIF, and should
28                                          (continued...)

1   Defendants are accordingly entitled to summary judgment as to

2   Plaintiff's discrimination claims.

3

4   **B.   Harassment Claims**

5           With respect to Plaintiff's related argument that he was

6   also subject to race and/or age related harassment, that claim is

7   solely premised on what Plaintiff perceived to be "demeaning"

8   comments by Lisa Cigelske to the effect that Plaintiff was not

9   assimilating information quickly enough after his transfer to a

10  new supervisorial position.  Plaintiff has presented no evidence

11  whatsoever that any impatience expressed by Cigelske was

12  motivated by either Plaintiff's age and/or race.  The comments

13  attributed by Plaintiff to Lisa Cigelske were facially neutral in

14  that no reference was made to any protected classification.

15  Absent any concrete nexus to age and/or race bias, Plaintiff's

16  harassment claims necessarily fail.

17  ///

18  ///

19

20  _____

            [6](...continued)
21  have received such an evaluation before any adverse employment
    action was taken against him, that requirement does not apply in
22  the face of a reduction in force.  Defendants have shown that
    staffing cuts had to be made for first-level supervisors across
23  the board irrespective of the quality of the supervisors' job
    performance.  Moreover, and in any event, even under the
24  Performance Improvement Plan pursuant to which Plaintiff claims
    he should have been counseled prior to any adverse action being
25  taken against him, notification is required only if an employee's
    performance is deemed unsatisfactory.  As stated above, Plaintiff
26  here was not rated as unsatisfactory for purposes of determining
    whether he was a surplus employee; determination of his surplus
27  status was instead made on grounds that he was ranked lowest
    among supervisors determined to be functioning at a satisfactory
28  level.

                                    14

1   See Guthrey v. State of Cal., 63 Cal. App. 4th 1108, 1124 (1998)

2   (sex discrimination, harassment, and retaliation claims were

3   frivolous because none of the alleged misconduct was sexual in

4   nature and all of it was objectively gender-neutral).

5

6   **C.  Civil Rights Violations Under 42 U.S.C. § 1983**

7       The McDonnell Douglas burden-shifting analysis applicable to

8   Title VII claims is also properly used for analyzing alleged

9   violations of 42 U.S.C. § 1983.  See Rivera v. Puerto Rico

10  Aqueduct and Sewers Auth., 331 F.3d 183, 192 (1st Cir. 2003).  As

11  already discussed above, because Plaintiff's claims cannot

12  withstand scrutiny under McDonnell Douglas, they fail not only

13  under Title VII and FEHA, but also to the extent they are

14  asserted pursuant to Section 1983 in Plaintiff's Fifth Cause of

15  Action.[7]

16      Any claim made by Plaintiff under Section 1983 also fails

17  for an even more fundamental reason.  Any action taken against

18  Plaintiff by Pacific Bell, a private company, fails to satisfy

19  the prerequisite of state action attendant to any Section 1983

20  claim.  See American Mfrs. Mut. Ins. Co.  v. Sullivan, 526 U.S.

21  40, 49-50 (1999).  Hence Defendants are entitled to summary

22  adjudication as to the Fifth Cause of Action.

23  ///

24  ///

25  ///

26

27       [7]While 42 U.S.C. § 1988 is also a stated basis for the Fifth
    Cause of Action, that section is not independent and simply sets
28  forth remedies for violations of Section 1988.

**CONCLUSION**

     For the reasons stated above, Defendants' Motion for Summary Judgment is granted in its entirety.[8]  The Clerk of the Court is hereby directed to close this file.

     IT IS SO ORDERED.

DATED: March 1, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

     [8]Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

16